### James W. Tillman v. The People.

*Ways, classification of.* — Ways ʼmust be either public or private: there is no intermediate species of way for any purpose of passage.

*Ways: acceptance of dedication.* — The adoption by the Governor and Judges of the plan of the city of Detroit, and the laying down of a street upon the plat made by them, did not, of itself,ʼconstitute it a street or highway: this was but a naked dedication, which could only become effectual when accepted by the proper authorities on behalf of the public. People v. Jones, 6 Mich. 176.

The acceptance should be manifested by some act of the public authorities, either formally confirming or accepting the dedication, and ordering the opening of the street, or by exercising authority over it in some of the ordinary ways of improvement or regulation.

Where an alley was laid down on the plan of Detroit adopted by the Governor and Judges in 1806, and there was no act on the part of the public authorities accepting it, but the owners of adjoining lots were allowed to keep a large portion of it closed, and to erect valuable improvements upon and over it, until 1863, it was held, that it was now too late for the city to acquire any public rights in the part thus allowed to be closed, by acceptance alone.

*Ways: cul de sac.* — Held further, that as that part of the alley not thus closed was but a cul de sac, furnishing means of access to the rear of the lots upon each side, it could only be considered as an easement appurtenant to those lots, and in no sense a highway. People v. Jackson, 7 Mich. 432.

The parties interested in the adjacent lots would have a right to close this cul de sac, or to regulate its use as to them should seem proper, so far, at least, as respects its use as a way for passage or travel.

And it makes no difference, in this respect, that buildings erected along it, but since removed, were for a time used as dwellings. Any right of way depending upon such use of the buildings would cease when the buildings were removed.

*Dedication for other purposes than for ways: acceptance.* — If the laying down of alleys, by the Governor and Judges, on the plan of Detroit, is to be treated as a dedication for any public purpose besides that of ways for passage or travel, an acceptance or adoption of that dedication was just as essential to give them a public character, for any other purpose, as to give them that character as ways.

*Heard May 4th. Decided May 24th.*

TILLMAN *v*    PEOPLE.

Error to the Recorder's Court of Detroit, where plaintiff in error was convicted on a prosecution for obstructing a public alley. The facts sufficiently appear by the opinion.

*G. V. N. Lothrop*, for plaintiff in error:

1. Is one of the interior openings in a city block, used only as a passage to the rear of lots, a highway, or only a private way or easement to the lots?

It must be one or the other: — *Ang. on Highways*, 1, 3; 6 *Pick*. 62.

If it was a highway, then, of course, an obstruction would be an offense under the general laws of the State, and not the subject of municipal legislation as punishment on matters embraced within the general statutes or common law.

But it is clearly only a private way: — *The People v. Jackson*, 7 *Mich*. 445; 3 *Hill*, 606; 4 *Cush*. 339; 16 *Barb*. 251; 5 *Seld*. 258; 23 *Barb*. 115.

2. If this was not a public highway, could the abutting owners, all concurring, extinguish the easement and close it?

It seems to me plain that they could: — 7 *Mich*. 451; 4 *Cush*. 339; 3 *Hill*, 606; 5 *Seld*. 258, 260; 37 *Penn*. 503; 5 *B & Ald*. 457.

Indeed, it seems doubtful whether the alley, *regarded as a separate easement*, does not at once become extinguished when *all of the property* over which it passes, and to which it. was appurtenant, falls into the hands of one owner. For, generally, a man can not have an easement in his own estate. By merger the less interest is extinguished in the greater: — 5 *Met*. 450; *Wash. on Easements*, 517.

Any act done by the owner of an easement, with respect to the dominant estate, which is inconsistent with

the continuance of the easement, will operate as an extinguishment of it: — 9 *Met.* 395; *Wash. on Easements*, 537, *and cases cited.*

And, *a fortiori*, when the titles of all the estates are united, any act of the owner, which shows that he intends that the easement shall no longer continue, must operate to destroy it.

*C. I. Walker*, for defendants in error.

CHRISTIANCY J.:

This was a prosecution against the plaintiff in error, by complaint in the Recorder's Court of the city of Detroit, for " obstructing and incumbering a public alley in said city, running westerly from the westerly line of Griswold street, between Jefferson Avenue and Woodbridge street, by erecting upon and in said alley, a small office or building, contrary to the ordinances of said city."

The ordinance claimed to have been violated provides that " No person shall obstruct or incumber any public wharf, street, alley or other public space, with any article or thing whatsoever." See *Revised Ordinances of* 1863, *Ch.* 29, § 5. This ordinance relates to no other alleys than such as are essentially of a public character, or which have, in some way, become established for the public use as public grounds ; and which, therefore, the general public, or at least the people of the city, have a general interest in keeping, and a right to keep, unobstructed. The complaint must be understood (if it be sufficient for any purpose — a question we shall not discuss) — as intended to describe the alley in question as one of this public character. The power of the Common Council to prohibit by ordinance the obstruction of alleys of a private nature, made only by, or for the use of, the owners or occupants of particular lots, and depending only upon

the consent or agreement of individual property holders, is not claimed, and could not be supported; though, for purposes connected with public health the Common Council would doubtless possess certain powers over private alleys and other private property.

But neither the ordinance in question, nor the complaint in the case, would seem to have any reference to acts affecting the public health : both speak only of " obstructing and incumbering streets, alleys, &c." The object of this provision of the ordinance would seem to be mainly, if not entirely, so far as relates to alleys, to secure the use of them for purposes of passage and travel. And the language of the prohibition is appropriate to this end. The public character of the alley, so far as it depends upon its use, or the right of the public to use it, *in this manner*, can only be maintained on the ground that it is a public way or highway. Ways must be either public or private : there is no intermediate species of way for any purpose of passage.

Our first inquiry then, is, was this alley a public way or highway at the time of the obstruction or incumbrance complained of ?

The alley was laid down upon the plan or plat of the city made by the Governor and Judges in 1806–7, and, as exhibited upon this plan (upon paper), it extended through the block from Griswold street to Shelby street: but no part of the alley was ever opened by any one, or for any purpose, further west than the east line of the Campau lot, 132 feet west from Griswold street; thence through to Shelby street it has always remained closed. Across the west part of this 132 feet of the alley (which was formerly open) a brick building was erected within about six feet of the ground, to connect two stores (next the Campau line) on opposite sides of the alley. This building seems to have been erected prior to the obstruction complained of, which is further towards

Griswold street. By the same plat of the Governor and Judges there was a spur or offshoot of this alley, extending southwardly from it between lots 48 and 50, to the rear of lot 49, where it stopped without connecting with any other passage. This spur, alley or cul de sac, was never opened, and is now covered by the block of brick buildings erected by Stephens & Field (the latter being the complainant in this prosecution). It does not appear from the evidence that the public or corporate authorities of the town or city of Detroit ever accepted or adopted this alley, or any part of it, or that they ever claimed or exercised any authority over it, by way of improvement, regulation or otherwise. ꜰAnd so far as it has, at any time, been kept open at all, it has been by the acts or sufferance of the owners of the adjacent lots.

We held in *People v. Jones*, 6 *Mich.* 176, that the adoption by the Governor and Judges of the plan of the city of Detroit, and the laying down of a street upon the plat made by them, did not, of itself, constitute it a street or highway; that the action of the Governor and Judges, acting on behalf of the United States as proprietors, was but a naked dedication of the land for a street, and that, as in the case of other land owners, it was essential, before such dedication could become effectual, that it should be accepted by the proper authorities on behalf of the public: that such acceptance should be manifested by some act of the public authorities either formally confirming or accepting the dedication, and ordering the opening of such street, or by exercising authority over it, in some of the ordinary ways of improvement or regulation. If this be necessary in case of a street laid down upon the plan, in order to constitute it a highway, it must be at least quite as essential in the case of an alley laid down upon the same plat.

But as the proper public authorities have never yet accepted, nor exercised any authority over any part of

this alley, as shown by the plan, and the owners of lots have been allowed to keep it closed west of Campau's east line, and valuable improvements have been erected upon or over that part of the remainder next east of this line, it would now be too late for the city to acquire any public rights in that part not now open by such acceptance alone. The alley must therefore be considered as permanently closed west of Campau's east line, and so far east thereof as improvements have been erected upon it. The remainder of the alley thence east to Griswold street is therefore but a cul de sac, furnishing a means of access to the rear of the lots upon each side, and can only be considered as an easement appurtenant to those lots, and in no sense a highway. This point was fully considered and decided in *People v. Jackson*, 7 *Mich.* 432; and we have seen no reason to change the views there expressed. And we think it clearly competent for all the parties interested in the adjacent lots to close the alley, or to regulate its use as to them shall seem proper; so far, at least, as respects its use as a way for passage or travel.

But it appeared that in 1832 there were several buildings on the south side of that part of the alley east of Campau's line, which were used as dwellings, and that this was used as a way to them; and on this ground it is claimed that this alley had become, thus far, a highway by user. If the owners of these lots chose to construct dwellings fronting on this alley, instead of the street, they had a right to do so; but they had an equal right to remove them; and this they seem to have done many years ago. It is quite evident, we think, that the use of the alley as a way to such buildings depended wholly upon the will of the lot owners; so far, at least, that when the buildings were removed, or ceased to be · used as dwellings, any right of way depending upon such use of the buildings would also cease.

TILLMAN v. THE PEOPLE.

But it is claimed by the prosecution that there are other public purposes to be subserved by the alleys of the city besides that of passage or travel, and that, for such other public purposes, the public interest of the city requires that they should be kept open. This may be true in respect to such of the alleys as have been opened, accepted or adopted by the proper corporate authorities. But no question of this kind arises in the present case, and we give no opinion upon it. If the platting of these alleys by the Governor and Judges is to be treated as a dedication for any other public purpose besides that of ways for passage or travel, an' acceptance or adoption of that dedication was just as essential to give them a public character, for any other purpose, as to give them that character as ways.

The charge of the Court below assumed that the mere platting of this alley by the Governor and Judges constituted it a public way; or, at least, public ground, which the Common Council had a right to control as such: that the lot owners had no right, therefore, by mutual consent, to close, obstruct or incumber it, or to regulate its use by agreement; and that such obstruction or incumbrance was an offense within the prohibition of the ordinance. The charge in these respects was, we think, clearly erroneous. So far as appears by the case as now presented, no public right has been injured by the obstruction complained of. The only injury shown to arise from the obstruction, if any, is but a private injury to one of the lot owners, for which he can only resort to his appropriate private action.

The judgment of the Recorder's Court must be reversed, with costs, and the conviction set aside.

MARTIN Ch. J. and CAMPBELL J. concurred.

MANNING J. was absent.