KRAUS v DEPARTMENT OF COMMERCE
APOSTILE v DEPARTMENT OF COMMERCE
ZIOLA v GERRISH TOWNSHIP
LUCK v LYON TOWNSHIP

Docket Nos. 100937-100942. Argued January 9, 1996 (Calendar No. 3).
Decided May 21, 1996.

Otto Kraus and other owners of land adjacent to Higgins Lake
brought an action in the Roscommon Circuit Court against Gerrish
Township to vacate unimproved portions of Newman, Walnut, and
Chestnut Avenues in Whittington Park, platted and recorded in
1903, alleging that the offers to dedicate the roads to public use
had not been accepted by the township before they lapsed or were
withdrawn. Following a bench trial, the court, Carl L. Horn, J.,
vacated the roads, finding that the township had not formally con-
firmed or accepted the dedication. The Court of Appeals, NEFF, P.J.,
and MURPHY and M. R. STEMPIEN, JJ., reversed (Docket Nos. 144762,
144998).

Peter and Pauline Apostile and other owners of land adjacent to Hig-
gins Lake brought an action in the Roscommon Circuit Court
against Gerrish Township, seeking to vacate a portion of Don M.
Boulevard in the Almeda Beach subdivision. The plat was recorded
in 1907. Following a bench trial, the court, Carl L. Horn, J., vacated
a portion of the boulevard, finding that there was insufficient evi-
dence that the road commission had accepted the offer of dedica-
tion. The Court of Appeals, NEFF, P.J., and MURPHY and M. R.
STEMPIEN, JJ., reversed (Docket No. 144763, 144999).

Isabelle M. Ziola brought an action in the Roscommon Circuit Court
against Gerrish Township and others, seeking to vacate the easterly
forty-five feet of Oak Avenue running from Robbins Avenue to Hig-
gins Lake. The plat was recorded in 1903. The court, Michael J.
Matuzak, J., on stipulated facts and exhibits, found that the plain-
tiffs' predecessors had consented to the road commission's claimed
interest in Oak Avenue in 1954 in exchange for the commission's
dismissal of a suit over the encroachment of a dwelling on the
road. The court held that equity required it to quiet title in the
defendant to the portions of Oak Avenue that were not improved
by the plaintiff, and in the plaintiff to the portions of Oak Avenue
that were improved by the plaintiff. The Court of Appeals, NEFF,

P.J., and MURPHY and M. R. STEMPIEN, JJ., affirmed (Docket No. 154036).

Randolph P. and Cynthia Luck, owners of property in Michigan Central Park, Third Addition, platted and recorded in 1901, brought an action in the Roscommon Circuit Court against Lyon Township and others, seeking to vacate the portion of Michigan Central Park Boulevard that fronted their lots. The Court, Carl L. Horn, J., denied the plaintiffs relief, finding that they had purchased the property with notice that the road commission had exercised jurisdiction over it in 1959 and that there had been some proof of public use. The Court of Appeals, NEFF, P.J., and MURPHY and M. R. STEMPIEN, JJ., affirmed (Docket No. 157571).

In all the cases, the Court of Appeals treated the recorded plats as offers to dedicate the individual roads to public use, and a 1937 McNitt resolution of the Roscommon County Road Commission as timely acceptance. The plaintiffs appeal.

In a unanimous opinion by Justice CAVANAGH, the Supreme Court *held*:

A general McNitt act resolution that did not expressly identify the platted roads to be taken over or the recorded plat in which the roads were dedicated is insufficient to effect manifest acceptance of an offer to dedicate the roads to public use.

1. A valid dedication of land for a public purpose requires a recorded plat designating the areas for public use, evidence of a clear intent by the plat proprietor to dedicate the areas to public use, and acceptance by the proper public authority. Public acceptance must be timely and must be disclosed through a manifest act by the public authority either formally confirming or accepting the dedication or by exercising authority over it. The burden of proving acceptance is on the public authority, while the burden of proving withdrawal is on the property owner. As long as the plat proprietor or a successor takes no steps to withdraw the offer to dedicate, it will be treated as continuing. Whether an offer to dedicate lapses or continues depends on the circumstances of each case.

2. The McNitt act, 1931 PA 130, required each board of county road commissioners to take over all township highways and incorporate them into a county-wide highway system. Because a county cannot take over privately owned streets by a resolution under the act, nor can private property be forced on a public authority without its consent, a general resolution that did not expressly identify the platted roads to be taken over or the recorded plat in which the roads were dedicated was insufficient to effect manifest acceptance of an offer to dedicate the roads to public use.

3. Offers are deemed withdrawn when the proprietors use the property in a way that is inconsistent with public ownership. What qualifies as inconsistent use will depend on the circumstances of each case, and acquiescence by one of the parties to the other party's use of the property will often be pivotal. Examples of inconsistent use have included erected buildings, fenced-in enclosures, and planted trees.

4. In *Kraus*, the road commission failed to prove formal or informal acceptance of Walnut or Chestnut Avenues. The eighty-six year interval between the date of the recording of the plat and the date of suit exceeded a reasonable lapse of time. However, while the plaintiffs may have proven that as early as 1931 Newman Avenue was put to a use inconsistent with a dedication to public use, remand for further fact finding is required regarding when the plaintiffs first put Newman Avenue to a use inconsistent with a dedication to public use.

5. In *Apostile*, the plaintiffs did not prove that any of their predecessors in title possessed any portion of Don M. Boulevard in a way inconsistent with public ownership before 1959. Affidavits recorded in 1959 acted as sufficient acceptance of the boulevard by the commission. The property owners' thirty-year delay in challenging the 1959 affidavits render unnecessary a decision whether the acceptance was timely.

6. In *Ziola*, all the easterly forty-five feet of Oak Avenue should have been vacated, and title should have been quieted in the plaintiff.

7. In *Luck*, the plaintiffs purchased the property with notice that the road commission had exercised jurisdiction over the boulevard in 1959 and failed to prove any use of the boulevard by their predecessors before 1959 that would have been inconsistent with an offer of dedication.

*Kraus* and *Ziola*, modified and remanded for further proceedings.

*Apostile* and *Luck*, affirmed.

205 Mich App 25; 517 NW2d 756 (1994) affirmed in part and modified in part.

*Carey & Associates, P.C.* (by *William L. Carey* and *Kathleen Kaufman*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *James E. Riley*, Assis-

tant Attorney General, for state appellees, Natural Resource Division.

*James R. Deamud* for Roscommon County Road Commission in *Luck*.

*Hess & Hess, P.C.* (by *Robert A. Hess*), for Gerrish Township.

*Douglas Dosson* for Lyon Township in *Luck*.

*Cox & Hodgman, P.C.* (by *William H. Horton*), for defendants in *Kraus, Apostile,* and *Luck*.

*Gerard F. Brabant* for Two Lakes Building Corporation in *Kraus*.

CAVANAGH, J. This is a consolidated appeal of four separate cases in which the plaintiffs sought to vacate unimproved platted roads adjacent to Higgins Lake in Roscommon County pursuant to the Subdivision Control Act, MCL 560.101 *et seq.*; MSA 26.430(101) *et seq.* In all four cases, the disputed roads were designated as avenues or boulevards, and were dedicated to public use in subdivision plats that had been recorded between 1901 and 1907. The plaintiffs contend that the offers to dedicate the roads to public use were not accepted by the defendants before the offers lapsed or were withdrawn.

The respective circuit courts granted relief to the plaintiffs in *Kraus* and *Apostile*, denied relief in *Luck*, and, by invoking equitable authority, ordered what amounted to a land trade in *Ziola*. On appeal, the Court of Appeals reversed in *Kraus* and *Apostile*, and affirmed in *Luck* and *Ziola*. 205 Mich App 25; 517 NW2d 756 (1994). The panel treated the recorded plats as "offers" to dedicate the individual roads to

public use, and a 1937 McNitt act[1] resolution of the Roscommon County Road Commission as timely "acceptance." We granted leave to the plaintiffs to appeal. 450 Mich 866 (1995).

I

In cases like these, the well-established rule is that a valid dedication of land for a public purpose requires two elements: a recorded plat designating the areas for public use, evidencing a clear intent by the plat proprietor to dedicate those areas to public use, and acceptance by the proper public authority. *Lee v Lake*, 14 Mich 11, 18 (1865). Public acceptance must be timely, *Wayne Co v Miller*, 31 Mich 447, 448-449 (1875), and must be disclosed through a manifest act by the public authority "either formally confirming or accepting the dedication, and ordering the opening of such street, or by exercising authority over it, in some of the ordinary ways of improvement or regulation." *Tillman v People*, 12 Mich 401, 405 (1864). In *Miller*, this Court explained that the requirement of public acceptance by a manifest act, whether formally or informally, was necessary to prevent the public from becoming responsible for land that it did not want or need, and to prevent land from becoming waste property, owned or developed by no one. *Id.* at 448.

In the instant cases, if the offers to dedicate the platted roads were timely and effectively accepted by the respective township or county, then the circuit court had no authority to vacate the roads absent the particular defendant's consent. MCL 560.226(1); MSA

---

[1] 1931 PA 130, repealed by 1951 PA 51, § 21.

26.430(226)(1).   It is undisputed that the plats were appropriately recorded and that the designated avenues and boulevards were dedicated to public use. It is also undisputed that the defendants have expended no money to improve the roads at issue. Accordingly, the disposition of each case will be resolved by determining whether the respective public authority manifested a timely acceptance before the property owner withdrew the offer to dedicate or before the offer lapsed on its own: a race, if you will, to see who first acted to claim the platted road. The burden of proving acceptance of the offer is on the public authority; the burden of proving withdrawal of the offer is on the property owner. *Vivian v Roscommon Co Bd of Rd Comm'rs*, 433 Mich 511, 515-517, n 10; 446 NW2d 161 (1989).

We must first address three issues: (1) if, and when, an offer to dedicate property to public use lapses, (2) whether a McNitt resolution, in and of itself, is valid manifest acceptance by the public authority, and (3) by what acts the original grantor, or his successors, may withdraw an offer to dedicate property to public use before acceptance by the public authority.

TIMELY ACCEPTANCE

The *Miller* Court stated:

> If the plat is only an offer to dedicate, the offer must be accepted or it may be withdrawn, and after any considerable lapse of time must be regarded as no longer open for acceptance, unless the circumstances are such as to make the offer continuous. [*Id.* at 449-450.]

The Court further opined what would be a considerable lapse of time:

After what length of time such an offer must be regarded as withdrawn, circumstances may perhaps determine, but unless there were facts equivalent to a continuous renewal of the offer, it cannot be considered open after the lapse of a period of time sufficient to bar all actions for the recovery of lands under the statute of limitations. After such a lapse of time, the dedication to public uses must be regarded as confined to the bounds within which the action of the public with the presumed acquiescence of the donor has practically limited it. [*Id.* at 450-451.]

The plaintiffs contend that the offer to dedicate lapsed automatically after fifteen years (the statutory period of limitation for adverse possession), absent actions by either the granting proprietor or the donee public authority. We disagree, because such a rule would harshly deprive the public of land that was originally intended for its use merely because the public authority did not act in situations in which public necessity had not yet required that the offered property be placed into public service or in which the funds available for such development were insufficient.[2] We note that the Higgins Lake area was sparsely populated at the time that these plats were recorded. Under the plaintiffs' proposed rule, the public authorities would have needed to accept the 1901 platted roads by 1916, the 1903 platted roads by 1918, and the 1907 platted roads by 1922. However, there was no need then to develop all the dedicated roads, nor were funds available to do so even if desired. Additionally, it would be arbitrary for this Court to apply a fifteen-year timeline retroactively.

---

[2] We note that modern dedications for public purposes in recorded subdivision plats are now presumed by statute to be accepted, absent timely and proper withdrawal by the plat proprietor. See the Subdivision Control Act, MCL 560.255b; MSA 26.430(255b); *Vivian, supra.*

With these points in mind, we continue to adhere to the course expressed in *White v Smith*, 37 Mich 290, 295-296 (1877):  As long as the plat proprietor or his successor took no steps to withdraw the offer to dedicate, the offer will be treated as continuing. See *Vivian*, 433 Mich 519-520. Therefore, whether an offer to dedicate lapsed or continued depends on the circumstances of each case. While the outer limit for acceptance within a reasonable time has not been set, we note that this Court has held that a 1961 acceptance of an 1874 grant (eighty-seven years later) was unreasonably late. *Shewchuck v City of Cheboygan*, 372 Mich 110, 114; 125 NW2d 273 (1963).

### MANIFEST ACCEPTANCE

Another issue in this case is the means by which the public authority may manifest acceptance of property dedicated to public use. The Court of Appeals looked to the McNitt act, 1931 PA 130,  which required each board of county road commissioners to take over all township highways and incorporate them into one county-wide highway system over a five-year period. The act has been repealed, amended, and reenacted a few times. It is important to this case only to the extent that it provided the framework for the Roscommon County Road Commission to pass a resolution taking over township roads on April 2, 1937.

That resolution provided:

> Whereas, the McNitt-Holbeck-Smith Bill . . . requires that all dedicated streets and alleys in recorded plats outside of incorporated villages or cities be taken over on April 1st, 1937, by County Road Commissions in Michigan, for maintenance by said County Road Commissions,

Therefore, be it Resolved, that the Roscommon County Road Commission take over for County Maintenance, under the McNitt-Holbeck-Smith Bill, being Act 130, P.A. 1931, *all dedicated streets and alleys in recorded plats within Roscommon County*, outside of the Village of Roscommon, that being the only incorporated City or Village within Roscommon County, for a total mileage of such streets and alleys of 170.236 miles. [Emphasis added.]

In the instant cases, the Court of Appeals held:

[A] "McNitt Act acceptance" is sufficient, in and of itself, to constitute an acceptance of an offer of dedication that has remained open and, thereby, to complete the dedication and create an irrevocable public interest in a roadway. [205 Mich App 44-45.]

The panel relied on *Rice v Clare Co Rd Comm*, 346 Mich 658; 78 NW2d 651 (1956), and *In re Vacation of Cara Avenue*, 350 Mich 283; 86 NW2d 319 (1957). Such reliance was misplaced.

In *Rice*, the McNitt resolution expressly referred to the specific plat in which the street at issue had been dedicated. *Id.* at 664.[3] Likewise, in *Cara Avenue*, the McNitt resolution expressly referred to the specific plat in which the avenue at issue had been dedicated. *Id.* at 286.[4] Accord *In re Petition of Bryant*, 323 Mich

---

[3] The road commission's 1937 McNitt resolution expressly referred to " 'Plat of Tompkins Resort, part of government lots 6-7, section 17, township 18 north, range 5 west, Clare county, Michigan, total mileage of the streets and roads, 1.3792.' " *Id.* at 664. The street at issue, Beach Street, was located in Tompkins Resort.

[4] We note that it was in dicta that the *Cara Avenue* Court stated that a McNitt resolution was formal acceptance. In its controlling analysis, the Court relied on five factors in ruling in favor of the county. *Id.* at 288-289. First, there was a formal dedication on August 16, 1909. Second, the township formally approved and recorded the dedication in October 1909. Third, there was no intervening formal withdrawal of the dedication or use inconsistent with dedication by the grantors. Fourth, the county road

424, 429; 35 NW2d 371 (1949) (the resolution referred to specific streets). Therefore, it can logically follow from *Rice, Cara Avenue,* and *Bryant,* that a McNitt resolution can only qualify as formal acceptance where it expressly identified a platted road or the recorded plat in which the road in dispute was dedicated. Contrast *Eyde Bros Development Co v Roscommon Co Bd of Rd Comm'rs,* 161 Mich App 654, 656; 411 NW2d 814 (1987), which considered the same 1937 McNitt resolution by the Roscommon County Road Commission and held that a McNitt resolution, standing alone, was insufficient.[5]

We note that a county cannot take over privately owned streets by such a McNitt resolution. *Missaukee Lakes Land Co v Missaukee Co Rd Comm,* 333 Mich 372, 376; 53 NW2d 297 (1952). It is also fundamental that private property cannot be forced on a public authority without its consent. *Miller,* 31 Mich 449. Given that the McNitt act *required* county road commissions to take over township roads, we believe that, with respect to a McNitt resolution that was only general in nature, the instant panel's holding would run the risk of imposing duties and financial responsibilities on a county for dedicated roads that

---

commission passed the McNitt resolution in 1937. And finally, the main portion of the street (not including the disputed part) had been graveled by 1919, and paved in 1939. The Court emphasized the second factor.

[5] *Eyde* also involved a 1953 McNitt resolution that *did* refer to the specific subdivisions that contained the streets at issue. There, the plats were recorded in 1927 and 1944. The panel found that acceptance did not occur until the street was paved in 1962. However, the plaintiffs had done nothing to exclude the public from the platted street until one of them fenced off the unimproved end of it in 1980. Because the defendants would have prevailed whether or not the 1953 resolution was sufficient, we need not decide whether *Eyde* is valid with respect to McNitt resolutions that specified the relevant subdivision or street.

the county did not knowingly or intentionally accept. This very prospect was discussed in *Miller*:

> As the execution and recording of the plat is wholly a private matter, subject to no public supervision whatever, this view would enable proprietors of lands to lay out so many streets and avenues as they might see fit, and wherever their private interests should determine; and whether the streets were desired by the public or not, the private ownership would be displaced. Either one of two consequences must then follow: the public must be under some obligations to treat the land as constituting a street, and be subject to such liabilities as that fact would impose, or the land must remain waste property, in the hands of an owner who cannot use it for the purposes of profit, and who at the same time refuses to put it to the purposes contemplated in making the plat. [*Id.* at 449.]

For these reasons, we hold that a McNitt resolution that did not expressly identify the platted road in dispute or the recorded plat in which that road was dedicated is insufficient to effect manifest acceptance of the offer to dedicate the road to public use. Hence, we must review the facts of each case before us to determine if and when the defendants manifested acceptance of the platted roads in dispute by other means.

EFFECTIVE WITHDRAWAL

The remaining critical issue in this appeal is by what acts a private property owner may manifest withdrawal of an offer to dedicate the property to public use. Again, the answer will depend on the specific circumstances in each case.[6] Here, none of the

---

[6] See MCL 560.255b; MSA 26.430(255b), as interpreted by *Vivian*, *supra*, for the modern requirements for withdrawals by plat proprietors.

plaintiffs or their predecessors recorded a formal notice of withdrawal. They argue that their private use of the platted roads acted as an *informal* withdrawal.

The rule was stated in *Field v Village of Manchester*, 32 Mich 279, 281 (1875):

> It is very evident that something more than a mere offer of dedication by platting is necessary in order to make it a public highway. There must be an acceptance on the part of the public. When a person in platting property maps out streets thereon, the authorities may accept them in whole or in part. An acceptance of a part is no acceptance of the whole. They may take and use what the public necessities, in their opinion, require, and they are not bound thereby to assume the burdens and responsibilities of opening, grading and keeping in repair the other portions. In case they do not, however, within a reasonable time accept of the streets thus offered to be dedicated, the owners of the lands fronting thereon, may again take possession of the property, and treat it as though, in all respects, no offer of dedication had ever been made.

Offers are deemed withdrawn when the proprietors use the property in a way that is inconsistent with public ownership. *Lee*, 14 Mich 18.

What qualifies as inconsistent use will depend on the circumstances of each case, and acquiescence by one of the parties to the other party's use of the property will often be pivotal. *Tillman*, 12 Mich 404 (public authorities allowed the property owner to keep an alley closed and to build improvements). We observe that examples of inconsistent use have included erected buildings, fenced-in enclosures, and planted trees. See *Vivian*, 433 Mich 520-521, *Field*, 32 Mich 280, *Miller*, 31 Mich 447, and *Lee*, 14 Mich 17.

We turn now to the instant cases.

II

*KRAUS v DEPARTMENT OF COMMERCE*

Plaintiffs Kraus, Kurz, Stoye, and Mueller initiated suit in 1989 to vacate portions of Newman Avenue, Walnut Avenue, and Chestnut Avenue in Whittington Park, which was platted and recorded in 1903. The portions of the three avenues that the plaintiffs sought to vacate originate at Higgins Lake and extend west to Burrows Avenue, which runs in a north-north-easterly direction. The three avenues are approximately fifty feet wide, and the portions at issue vary in length from ninety to ninety-five feet. Block 11, with thirty-eight platted lots, is located to the north of Newman Avenue, lot 38 being most adjacent. Block 10, with ten platted lots, separates Newman Avenue from Walnut Avenue to the south. In turn, block 9, also with ten platted lots, separates Walnut Avenue from Chestnut Avenue to the south. Block 8, with ten platted lots, lies adjacent to Chestnut Avenue's south side.

During trial, the defendants and plaintiffs stipulated that there was no record proof that Gerrish Township ever formally or informally accepted the three roads. The defendants introduced several documents that they contend manifested acceptance by the Roscommon County Road Commission of the portions of the roads at issue. We consider the proffered documents in chronological order to determine the earliest date of manifest acceptance. The defendants relied on the 1937 McNitt resolution, which we have indicated was insufficient because of its general nature. Next, a copy of the minutes of an April 16, 1940, meeting of

the road commission was introduced. It reported a resolution by which the road commission purported to take over a list of described roads as county roads. The list was published in the Roscommon Herald-News. *It did not include Walnut or Chestnut Avenues.* It did describe Newman Avenue, but only stated that Newman Avenue was 132 feet in length. In the plat, Newman Avenue extended considerably longer. It is unclear whether the defendant proved that the 132 feet corresponded to the portion of Newman Avenue that the plaintiffs sought to vacate.

Another document introduced was a copy of the minutes of a February 2, 1948, meeting of the road commission. There, the road commission noted that a financial crisis had developed as a result of the practice of subdivision owners dedicating streets to public use and then selling off lots before the dedicated streets had been constructed. The road commission resolved not to approve subdivision plats in the future before the plat owner had constructed the dedicated streets and necessary drains or had furnished a bond sufficient to pay for the costs of such construction. The next relevant document was a copy of the minutes of a March 16, 1953, meeting of the road commission.[7] The minutes reported that the road commission resolved

[t]hat the Roscommon County Board of County Road Commissioners hereby formally acknowledge and confirm and reaffirm, their *prior* taking over as County Roads, all streets, roads and alleys, whether named or not, and whether called avenues, boulevards, courts, streets or

[7] This resolution was prompted by 1951 PA 51, § 19, MCL 247.669; MSA 9.1097(19), which repealed the McNitt act.

alleys, heretofore required to be taken over as County Roads by the provisions of Act 130 of the Public Acts of 1931 as amended; and further that said Roscommon County Board of County Road Commissioners does hereby take over as County Roads, as required by Act 51 of the Public Acts of Michigan for 1951, section 19, all dedicated streets and alleys in the following subdivisions lying outside the Incorporated Village of Roscommon, in Roscommon County.

\* \* \*

Whittington Park . . . . [Emphasis added.][8]

We find it significant that the 1940 resolution omitted any reference to Walnut and Chestnut Avenues. We further find that the 1953 resolution merely reaffirmed the resolutions of 1937 and 1940. Accordingly, we conclude that the 1953 resolution referred only to those roads that were *already* public roads. Continuing with the defendants' proofs, there is a copy of the July 2, 1965, minutes of the road commission, which merely noted that encroachments had been observed on Walnut and Chestnut Avenues and that the secretary was to notify the owners by certified mail, asking them to remove the encroachments. No copy of any notice was produced, nor was any evidence produced that the encroachments were removed.

We conclude that the road commission manifested acceptance *no earlier* than 1940 with respect to Newman Avenue. We also find that the defendants have

---

[8] The defendants could not prove at trial that the 1953 resolution was published in any local paper or that any notice was sent to the adjacent property owners. *Rice, supra,* indicated that road commission records are sufficient to manifest formal acceptance. 346 Mich 664.

failed to prove any formal or informal acceptance of
Walnut or Chestnut Avenues before trial. We find that
the eighty-six year interval between the date of the
recording of the plat and the date that the plaintiffs
initiated suit was beyond a reasonable lapse of time.
See *Shewchuck*, 372 Mich 114.

With respect to Newman Avenue, we review the
plaintiffs' proofs to determine if the offers to dedicate
were withdrawn before 1940. With respect to Walnut
and Chestnut Avenues, even though unnecessary, we
recap the plaintiffs' proofs for informational purposes
only. Had we found legal acceptance by the defend-
ants, such evidence may have been relevant.

We turn first to Newman Avenue. Plaintiffs Freder-
ick and Barbara Stoye owned lots 33 to 38, block 11,
adjacent to the north side of Newman Avenue. Plain-
tiff Helen Mueller owned lots 1 to 3, block 10, adja-
cent to the south side of Newman Avenue. Frederick
Stoye testified that he had inherited the property
from his father, who had owned it since 1930. He tes-
tified that at the time of trial a fence extended from
lot 38 across the front of Newman Avenue and across
Mueller's lot line to the south. The fence was located
about eight to ten feet east of Burrows Avenue. He
alleged that a fence had been in that location since
1931, with the present wooden fence replacing its
predecessor in 1962. We have examined photographs
of the fence and find that a person would have to
climb over or through the fence in order to reach
Newman Avenue. Stoye also testified that the Ros-
common County Road Commission had sent a notice
to his father in 1965, requesting that he remove the

fence.[9] However, the fence was not removed. Stoye also testified that his father had constructed a concrete curb that extended beneath the fence.[10]

Mueller testified that she and her husband, since deceased, had purchased their lots in 1934. She and her husband built a stone garden house (which she believed would be about twelve feet by twelve feet) in 1959, that extends partially into Newman Avenue.

We conclude that the plaintiffs may have proven that as early as 1931 Newman Avenue was put to a use inconsistent with a dedication to public use. The fence allegedly extended the entire width of the platted street and a few feet from Burrows Avenue. Fencing off access to property would be a use inconsistent with the idea of public ownership. *Field*, 32 Mich 280. However, we must remand for further fact finding. The trial court must determine when in fact the plaintiffs first put Newman Avenue to a use inconsistent with a dedication to public use. If the trial court finds that this was not before 1940, the trial court should further determine whether the defendants did accept this portion of Newman Avenue in 1940. If not, then

---

[9] The defendants produced a copy of the letter, which stated in part:

We must ask that the fence be removed from Burrows Avenue at the intersection of Newman Avenues leaving Newman Avenue open to the shore of Higgins Lake, within thirty (30) days, or, same will be done by our forces and the work assessed to the owner.

[10] The defendants emphasize that during cross-examination Stoye testified that at one time he had challenged property taxes assessed by Gerrish Township, which had mistakenly taxed him for Newman Avenue. However, a private person could not start paying property taxes on public property and thereby gain title to it. Moreover, the mere removal of dedicated property from the tax roll does not amount to a formal acceptance because "[t]he assessor ha[s] no authority to accept dedication for the public." *Murphey v Lee Twp*, 239 Mich 551, 562; 214 NW 957 (1927).

the trial court may make further determinations consistent with this opinion.

Next, we consider Walnut Avenue. Plaintiff Edward Kurz owned lots 7 through 10, block 10, adjacent to and north of Walnut Avenue. The lots had been owned by his family since 1939. Pictures of Walnut Avenue and a situation survey depict a concrete and cobblestone picnic table, bench, and grill area that extends crosswise across the avenue near Higgins Lake and appears to be at least twenty feet in length. Kurz testified that he and his father built the structure in 1942. A stone planter has the date "1925" etched into it. Kurz also personally remembered a wire fence built in the late 1930s or early 1940s extending lengthwise through the center of Walnut Avenue, with a wooden gate for access between neighbors. The fence deteriorated over the years and disappeared by the 1950s or 1960s.

Plaintiff Otto Kraus testified that he owned block 10, which is adjacent to both Walnut and Chestnut Avenues, and that he had inherited it from his wife in 1987. The property had been owned by her family since the early 1920s. Kraus became personally familiar with the property in 1936. He confirmed that the grill and picnic area had existed since the early 1940s.

As stated above, we find that the defendants have failed to prove timely manifest acceptance of the offer to dedicate Walnut Avenue to public use. Accordingly, we order that Walnut Avenue be vacated in favor of the adjacent plaintiffs.

Finally, we consider Chestnut Avenue. Kraus owned the property adjacent to the north of Chestnut Avenue, while his neighbor, Robert Hoffman, owned the property adjacent to the south. Hoffman pur-

chased lots 1 through 5, block 8, in 1988. A situation survey revealed that Hoffman's house encroached into Chestnut Avenue, as did part of a concrete driveway. There was also a split-rail fence that originated at the concrete driveway, extended a few feet to the north and then ran lengthwise through the middle of Chestnut Avenue, ending just short of Higgins Lake. Kraus testified that the Hoffman house had been situated in its current location since 1963.

Again, we find that the defendants failed to prove timely manifest acceptance of the offer to dedicate Chestnut Avenue to public use. Accordingly, we conclude that Chestnut Avenue should be vacated in favor of the plaintiffs.

*APOSTILE v DEPARTMENT OF COMMERCE*

Plaintiffs Apostile, Grenell, Fritz, Fryfogle, Rimarcik, Rusak, Semack, and Lumbert initiated suit in 1989 to vacate a portion of Don M. Boulevard in the Almeda Beach subdivision. A bench trial was held in 1991. The Almeda Beach plat was recorded in 1907. Don M. Boulevard runs in a basically north-south direction along Higgins Lake. The plaintiffs own lots 12 to 15, block 2, and lots 10 to 13, block 3, which are platted in an east-west direction and are separated from Higgins Lake by Don M. Boulevard. Blocks 2 and 3 are separated by Third Street, which has been improved and extends across Don M. Boulevard. Second Street, bordering the north side of block 2, and Fourth Street, bordering the south side of block 3, have also been improved and extend across Don M. Boulevard. The plaintiffs each own a dock that extends from Don M. Boulevard into Higgins Lake.

The defendants produced copies of affidavits by the Roscommon County Road Commission Clerk that were recorded in 1959 with respect to each plaintiff's lot. All contained similar language, typified by the following recorded affidavit with respect to lot 13, block 3, Almeda Beach:

> Grading, landscaping, and/or improvements as lawn of dedicated street area, insofar as exclusive private use of street so developed is claimed or intended; use of land between westerly line of Lot 13, Block 3, Almeda Beach and Higgins Lake, dedicated as Don M. Boulevard, must be shared with the public.
>
> Deponent further says that he makes this affidavit for the purpose of placing on record some evidence of the fact of notice being given by the Roscommon County Board of County Road Commissioners to the owners of said lots as to the fact of said encroachments and as to the right of the Roscommon County Road Commissioners to order the same removed whenever in its opinion removal may be necessary or desirable in the public interest.

Plaintiff Joseph Rimarcik testified that he had owned lot 13, block 3, since October 1988. He testified that the condition of the portion of Don M. Boulevard fronting lot 13 at the time of trial included a fire pit, a split-rail fence, a flagpole, trees and shrubbery, and a sprinkler system. However, he admitted that at the time he purchased the property, he was aware of a 1959 recorded affidavit by the clerk of the Roscommon County Road Commission.

Plaintiff Peter Apostile testified that he and his wife had purchased lot 12, block 3, sometime in the 1950s. He testified that at the time of trial there was a concrete walkway and patio in front of his lot, and a storage shed that extended partially into Don M. Boulevard. He also admitted that if the road commis-

sion had asked him to remove the concrete walkway he guessed he would have.

Plaintiff Robert Grenell testified that he and his wife had owned lot 11, block 3, for fifteen years. He further testified that he had built a shed in front of his lot on Don M. Boulevard four years before trial, a deck ten years before, and a cement sidewalk six or seven years before. He also testified that he did not believe that he had any rights to exclude people from Don M. Boulevard.

Plaintiff Gregory Semack testified that he had purchased lot 10, block 3, in 1982. He indicated that there were wooden steps in front of his lot, starting about halfway across Don M. Boulevard, which had been there when he purchased the property.

Plaintiff Helene Fritz testified that she and her husband, now deceased, had purchased lot 14, block 2, in 1966. She also testified that wooden steps existed in front of her property at the time she purchased her lot.

Plaintiff Clifford Lumbert testified that he and his wife had purchased lot 12, block 2, in 1972. He indicated that there were no man-made improvements in the portion of Don M. Boulevard in front of his lot.

The trial court granted the plaintiffs relief and vacated the relevant portion of Don M. Boulevard, expressly finding that there was insufficient evidence that the defendant road commission had accepted the offer of dedication. The Court of Appeals reversed, relying on the 1937 McNitt resolution. We disagree with both lower courts.

We find that the plaintiffs have not proven that any of their predecessors possessed any portion of Don M. Boulevard in a way inconsistent with public own-

ership before 1959. We further find that the affidavits recorded in 1959 acted as sufficient acceptance of Don M. Boulevard by the defendant road commission. Although the 1959 affidavits indicated that the road commission would temporarily acquiesce in any improvements, they expressly stated that Don M. Boulevard was to be shared with the public and expressly reserved the road commission's authority to remove any encroachment at any time. In light of the property owners' thirty-year delay in challenging the road commission's assertions in the 1959 recorded affidavits, we need not decide whether a 1959 acceptance of a 1907 dedicated plat was timely.

### *ZIOLA v GERRISH TOWNSHIP*

This case was submitted to the trial court on stipulated facts and exhibits. Oak Avenue was designated in the Whittington Park plat recorded in 1903. The portion of Oak Avenue at issue is fifty-feet wide and extends one hundred and twenty feet from Robbins Avenue in a north, northwesterly direction, ending at Higgins Lake. Lot 35, block 1, is adjacent to the avenue on its easterly side. Lot 1, block 2, is adjacent on its westerly side. Plaintiff Isabelle Ziola acquired title to lot 1 by quitclaim deed from Isabell Dockter on October 3, 1979. Mrs. Dockter and her husband had acquired the lot by warranty deed on October 29, 1949. On December 27, 1991, the parties stipulated that Ziola's dwelling and outbuildings have occupied the easterly forty-five feet of Oak Avenue for over fifty years. Accordingly, we find that the plaintiff's predecessors took possession of the easterly forty-five feet of Oak Avenue no later than 1942. On December 16, 1949, the Roscommon County Road

Commission voted to incorporate Oak Avenue between Robbins Avenue and Higgins Lake into the county highway system. The resolution was published three times in January 1950.

In 1952, the road commission sued the Dockters, seeking removal of the dwelling as an encroachment. On June 8, 1954, the road commission, by resolution, accepted the Dockters' offer to deed an easement for a public street over lot 1, block 2, such offer contemplating the use of the westerly five feet of Oak Avenue, in exchange for the road commission's dismissal of the case. The resolution was timely recorded. The conveyance of rights in lot 1, block 2, to the road commission was also dated June 2, 1954, and was timely recorded. The action was subsequently dismissed in July 1954. The road commission then improved lot 1, including the westerly five feet of Oak Avenue as platted, and constructed a lateral road access to Higgins Lake.

Ziola initiated suit in 1991 to vacate the easterly forty-five feet of Oak Avenue running from Robbins Avenue to Higgins Lake. The trial court found that the plaintiff's predecessors had consented to the road commission's claimed interest in Oak Avenue when they entered the 1954 agreement. The court therefore believed that equity required it to quiet title to the portions of Oak Avenue that were not improved by the plaintiff in the defendant and the portions of Oak Avenue that were improved by the plaintiff in the plaintiff. The court's opinion stated:

> Specifically, it is the Order of the Court that Plaintiff Ziola will be quieted in title to twenty-five feet of frontage on Higgins Lake, running east to west from the corner of Oak Avenue and Block 1, lot 35, then running south twenty

(20) feet, from the north boundary of Oak Avenue, then east
to west twenty (20) feet to a line which shall now be the
west boundary of Oak Avenue.

It also quieted title to lot 1, block 2, and to the west-
erly five feet of Oak Avenue and the westerly twenty-
five feet by twenty feet as omitted above, in the
defendant, pursuant to the 1954 agreement. The Court
of Appeals affirmed.

We modify the trial court's order. We find that the
defendant has conceded that the plaintiff's predeces-
sors put the easterly forty-five feet of Oak Avenue to
a use inconsistent with its dedicated public purpose
by building a house as early as 1942. However, the
parties stipulated that the defendant did not formally
accept the dedication until 1949. Moreover, the road
commission did not seek to remove the house until
1952. If the Dockters had pursued their rights in Oak
Avenue then, they should have prevailed because the
offer to dedicate had been effectively withdrawn
before any public authority sought to accept it. How-
ever, in the 1954 agreement, the Dockters offered to
dedicate their own lot, lot 1, block 2, along with the
westerly *five* feet of Oak Avenue, in exchange for the
road commission dropping its suit with respect to the
easterly forty-five feet of Oak Avenue. We note that
the defendant has accepted lot 1 and the westerly *five*
feet of Oak Avenue both formally, by the recorded
resolution and conveyance, and informally, by con-
structing a road.

We find that the easterly forty-five feet of Oak Ave-
nue was not timely accepted in 1949 and that the
offer to dedicate the easterly forty-five feet was not
renewed in the 1954 agreement. Accordingly, we hold

that the easterly forty-five feet of Oak Avenue should have been vacated, and title should have been quieted in the plaintiff. We therefore affirm the trial court's order, but modify it to extend plaintiff's title to include all of the easterly forty-five feet of Oak Avenue.

*LUCK v LYON TOWNSHIP*

Plaintiffs Randolph and Cynthia Luck own lots 1 through 4, block 143, of Michigan Central Park Third Addition, platted and recorded in 1901. They initiated suit in 1992 to vacate the portion of Michigan Central Park Boulevard that fronted their lots. Trial commenced in October 1992. Lots 1 through 4 are platted in an east-west direction. Lot 1 is adjacent to Haines Avenue to the north. Michigan Central Park Boulevard runs in a basically north-south direction along the east side of lots 1 through 4 and along the westerly shore of Higgins Lake. In the front of lots 1 through 4, the boulevard varies in width from ninety feet to more than one hundred fifty feet.

The Lucks purchased their lots on June 6, 1986, by quitclaim deed from Allen and Leslie Methven. The deed also conveyed any rights that the sellers may have had in Michigan Central Park Boulevard. Pictures introduced at trial, and confirmed by a situation survey, revealed that the only encroachment into the boulevard was a part of a concrete slab attached to the plaintiffs' dwelling house on lots 3 and 4, and a concrete step walkway extending from the slab across most of the boulevard.

As in *Apostile*, the Roscommon County Road Commission recorded an affidavit in 1959, using substantially similar language as reproduced above. More-

over, a title insurance commitment issued to the Lucks in 1986 clearly revealed the recorded affidavit.

The circuit court denied the plaintiffs relief because they had purchased the property with notice that the road commission had exercised jurisdiction over the boulevard in the 1959 recorded affidavits. The court also noted that there was some proof of public use of the boulevard, as evidenced by testimony about bonfires. The Court of Appeals affirmed, on the basis of the 1937 McNitt resolution. We affirm for the reasons stated by the trial court. The plaintiffs failed to prove any use of Michigan Central Park Boulevard by their predecessors before 1959 that would have been inconsistent with an offer of dedication. We further find that the road commission accepted the offer of dedication no later than 1959.

III

In conclusion, we reject the reasoning of the Court of Appeals that a general McNitt act resolution was manifest acceptance of a particular platted road. We affirm the panel's result in *Apostile* and *Luck*. We modify the result in *Kraus* and *Ziola*. Walnut Avenue, Chestnut Avenue, and the forty-five easterly feet of Oak Avenue, shall be vacated. Don M. Boulevard and Michigan Central Park Boulevard shall not be vacated. We remand *Kraus* and *Ziola* for proceedings consistent with this opinion. On remand, the trial court will make further findings of fact with respect to Newman Avenue.

We do not retain jurisdiction.

BRICKLEY, C.J., and LEVIN, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred with CAVANAGH, J.