*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOWNSHIP OF GRAYLING,

      Plaintiff/Third-Party Defendant-
Appellee,

v

ALAN BERRY and LOUIS SCARPINO,

      Defendants,

and

JOHN GUTKOWSKI, JAMES BOKHART,
ROBERT BUCHHOLZ, NANCY CHARTIER,
and DOUGLAS ELSWORTH,

      Defendants/Third-Party Plaintiffs-
Appellants,

and

CAROL BUCHHOLZ, DANIEL BUJALSKI,
RENEE BUJALSKI, BETTY BOKHART,
KATHERINE CHESNEY, MICHELE
GUTKOWSKI, DON HOLLIS, MATT
LATUSEK, KATIE LATUSEK, KAREN
MARTELLA, MICHAEL SAHR, SALLY SAHR,
TIM SCARPINO, CHRISTINA SCARPINO,
CONNIE STEVENS, MICHAEL STEVENS,
JUDY MERMEESCH, PAUL WAGNER,
JOANNE WAGNER, DAN WHITNEY, SHERRY
WHITNEY, and MARJORIE WHITNEY,

      Third-Party Plaintiffs-Appellants,

and

FOR PUBLICATION
July 23, 2019
9:00 a.m.

No. 344297
Crawford Circuit Court
LC No. 15-009657-CH

-1-

DIRECTOR OF THE DEPARTMENT OF
ENERGY, LABOR, & ECONOMIC GROWTH,
CHAIRPERSON OF THE BOARD OF
CRAWFORD COUNTY ROAD COMMISSION,
CRAWFORD COUNTY DRAIN
COMMISSIONER, DIRECTOR OF THE
DEPARTMENT OF TRANSPORTATION,
DIRECTOR OF THE DEPARTMENT OF
NATURAL RESOURCES, GREAT LAKES
ENERGY, MICHAEL MITCHELL, and JILL
MITCHELL,

   Third-Party Defendants-Appellees,

and

FRONTIER COMMUNICATIONS, CHARTER
COMMUNICATIONS, MICHAEL BUSHRE,
KELLY BUSHRE, RAYMOND CONFER,
WENDY CONFER, DAVID CONSTANTINE,
DEANNA CONSTANTINE, MICHAEL KOLKA,
HARRY & LUELLA KOLKA TRUST,
CHARLES THIEL, and MONIQUE THIEL,

   Third-Party Defendants.

---

Before:  O'BRIEN, P.J., and FORT HOOD and CAMERON, JJ.

CAMERON, J.

The Township of Grayling (hereinafter "Grayling") sued seven residents of Grayling, seeking declaratory and injunctive relief regarding the scope of the dedications of three specific platted roads located in a subdivision of Grayling known as Portage Lake Park.  After this lawsuit was filed, those seven residents, along with 22 other residents (hereinafter referred to collectively as "the residents"), filed a third-party claim against Grayling and the Crawford County Road Commission (hereinafter "Road Commission"), among others.  The residents appeal the trial court's order granting partial summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) and (C)(10) (no genuine issue of material fact) on the residents' amended counterclaim in favor of the Road Commission and a March 26, 2018 order granting summary disposition in favor of Grayling on its claims.  Because we agree that the trial court properly granted summary disposition of the residents' claims, we affirm.

## I. BACKGROUND

At the center of this case is a dispute involving three platted roads, Walnut Plaisance, Lincoln Park Boulevard, and portions of Portage Lake Drive, which are located in Portage Lake Park. The three roads were recorded in 1901 under three separate additions—the first, second, and fourth additions of Portage Lake Park. The roads were dedicated to and for the public's use. The Road Commission formally accepted Walnut Plaisance[1] and Lincoln Park Boulevard[2] in 1937, by way of a resolution under the McNitt Act, MCL 247.1 *et seq.*,[3] which specifically incorporated the two roads into the county road system.

The original plat was recorded as shown:



---

[1] The Road Commission accepted 1,050 feet of Walnut Plaisance that was platted in the first addition, and 1,200 feet of Walnut Plaisance that was platted in the fifth addition. The Road Commission accepted 1,346 feet of Lincoln Park Boulevard that was platted in the fourth addition, and 800 feet of Lincoln Park Boulevard that was platted in the sixth addition. Only the portions of roads platted in the first, second, and fourth addition are at issue in this case.

[2] The Road Commission did not accept Portage Lake Drive.

[3] The McNitt Act, 1931 PA 130, repealed by 1951 PA 51, § 21, allowed the county to takeover township roads specified as public in recorded plats. The current law, see MCL 247.669, contains similar wording and similarly allows the takeover of roads designed as public in recorded plats by a county, even if a township did not first accept the roads.

A survey performed in February 2018 depicts the improved portion of Lincoln Park Boulevard:



Portage Lake Drive, much of which has since been vacated by the Road Commission, runs parallel with and along the shoreline of what is now known as Lake Margrethe—originally named Portage Lake. Walnut Plaisance runs north and south, intersecting Portage Lake Drive at the shoreline. Lincoln Park Boulevard runs east and west, intersecting where Portage Lake Drive and Walnut Plaisance meet. The area where the three roads converge is the area in dispute in this case.

Although there are large portions of the three roads that were intended to be developed as indicated in the 1901 plat, areas of Walnut Plaisance, Portage Lake Drive, and Lincoln Park Boulevard have remained undeveloped since being platted, and therefore, large portions of the roads that were intended to be developed do not actually exist. For instance, much of Walnut Plaisance is actually forested area, including the area that was intended to reach the shoreline. In response to a 1956 petition signed by 30 owners of real estate located in two of the additions, the Road Commission passed a resolution abandoning a portion of Portage Lake Drive for residential development. Although the original plat indicated that the two roads would meet at the shoreline—Walnut Plaisance was to extend to the shoreline, and Portage Lake Drive was to extend along the shoreline—the two were never developed and do not actually meet. However, a portion of Lincoln Park Boulevard was opened in the 1960s and is the only road in dispute that

-4-

was developed and reaches the shoreline of the lake. The end of Lincoln Park Boulevard—the area the three roads as platted intersect—is now a dirt turnaround near the lake's edge and makes up the disputed area at issue.

Owners of backlots in Portage Lake Park have historically used the disputed area for recreational purposes including swimming and picnicking, and they have also placed a dock for the mooring of their boats. Grayling sought declaratory and injunctive relief regarding the scope of the dedications of the roads, streets, alleys, and boulevards at issue. Grayling maintained that the recreational activities of the residents exceeded the scope of the dedications and, therefore, Grayling sought a declaration as to the scope of the dedications. Grayling also maintained that the activities of the residents violated MCL 324.30111b, and Grayling sought to enjoin the individual residents from violating both the scope of the dedication and MCL 324.30111b. The residents have continually maintained that Grayling does not have an actual property interest or right in the disputed area because Walnut Plaisance and Lincoln Park Boulevard are not public roads, the roads do not terminate at the water's edge, and the residents' activities do not occur at the end of a public road.

## II. ACCEPTANCE OF DEDICATIONS

The residents first argue that the Road Commission did not accept the dedications of Walnut Plaisance and Lincoln Park Boulevard platted in 1901, and therefore, they are not public roads. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Jurisdictional questions under MCR 2.116(C)(4) are questions of law that are also reviewed de novo." *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001). Whether an offer of dedication has been accepted is a question of law. *Christiansen v Gerrish Twp*, 239 Mich App 380, 388; 608 NW2d 83 (2000). The question of timeliness amounts to a factual determination by the trial court because it depends on the circumstances of each individual case. *Kraus v Dep't of Commerce*, 451 Mich 420, 427; 547 NW2d 870 (1996). The trial court's factual findings are reviewed for clear error. *Vivian v Roscommon Co Bd of Comm'rs*, 164 Mich App 234, 238; 416 NW2d 394 (1987) (*Vivian I*), aff'd 433 Mich 511 (1989).

MCL 560.226(1)(b) and (c) provide that before a court may consider vacation, correction, or revision of a platted roadway dedicated to a county or township, the governmental unit must relinquish its rights. The residents maintain that the Road Commission does not have rights over the roads at issue because the Road Commission did not timely accept the dedications. Thus, the residents claim that the Road Commission did not accept the offers of dedication, despite the 1937 McNitt resolution, because (1) the 1937 McNitt resolution, without further action by the Road Commission ordering that Walnut Plaisance or Lincoln Park Boulevard be opened, was insufficient to establish acceptance, and (2) the length of time between the offers and the resolution in this case caused the offer to lapse. They also argue that even if a McNitt resolution is sufficient to establish acceptance, parts of Walnut Plaisance and Lincoln Park Boulevard, specifically, the road ends, must nonetheless be vacated because the 1937 resolution referred to (1) Walnut Plaisance in the first addition as being only 1,050 feet long, when the road, in actuality, is 1,320 feet long; (2) Walnut Plaisance in the fourth addition as being 1,150 feet long,

when the road, in actuality, is 1,320 feet long; and (3) Lincoln Park Boulevard in the second addition as being 1,750 feet long, when the road, in actuality, is 1,900 feet long.

## A.  ACCEPTANCE UNDER THE McNITT RESOLUTION

For a road to become public property there must be (a) a statutory dedication and an acceptance on behalf of the public, (b) a common-law dedication and acceptance, or (c) a finding of highway by public user.  *Village of Grandville v Jenison*, 84 Mich 54, 65-68; 47 NW 600 (1890), aff'd 86 Mich 567 (1891).  The roads at issue here were dedicated by statute.  To create a public road by statutory dedication, two elements are required: (a) "a recorded plat designating the areas for public use, evidencing a clear intent by the plat proprietor to dedicate those areas to public use," and (b) "acceptance by the proper public authority."  *Kraus*, 451 Mich at 424.[4] Public acceptance must be timely and must be disclosed through a manifest act by the proper public authority either formally confirming or accepting the dedication and ordering the opening of the street, or informally by exercising authority over it, in some of the ordinary ways of improvement or regulation.  *Kraus*, 451 Mich at 424.

The residents assert that the 1937 McNitt resolution standing alone, without the Road Commission ordering the opening of the roads, is insufficient to constitute acceptance.  In support of their argument, the residents cite *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83; 662 NW2d 387 (2003), aff'd 469 Mich 907 (2003).  However, *Higgins Lake* did not hold, as the residents claim, that "in addition to a timely acceptance, something more than a McNitt Act Resolution is required to perfect the acceptance."  Rather, this Court stated, "We need not consider whether the McNitt resolutions in this case were sufficient to constitute formal acceptance of Montrose Avenue" because the Court resolved the issue "on the basis of MCL 560.255b, the 1978 amendment of the Subdivision Control Act (formerly the Land Division Act) that creates a presumption of acceptance."  *Id*. at 114-115.

In *Rice v Clare Co Rd Comm*, 346 Mich 658, 664; 78 NW2d 651 (1956), the county road commission adopted a resolution in 1937 and "[r]esolved that the streets and alleys in the several plats of the county described below" "are taken over by the County" under the McNitt Act.  The plats were described as "Plat of Tompkins Resort, part of Government Lots 6-7, Section 17, Township 18 North, Range 5 West, Clare [C]ounty Michigan, total mileage of the streets and roads, 1.3792."  *Id*.  The Supreme Court held that the McNitt resolution, by itself, constituted a valid acceptance of the offer to dedicate.  *Id*. at 665.

In *Kraus*, 451 Mich at 427-430, the Court held that a McNitt resolution cannot suffice to accept a road if it is a general resolution purporting to take over all dedicated roads in a county. *Id*.  Instead, a McNitt resolution must expressly identify the platted road in dispute or the

---

[4] In *Wayne Co v Miller*, 31 Mich 447, 448 (1875), the Supreme Court explained that the requirement of public acceptance by a manifest act, whether formally or informally, was necessary to prevent the public from becoming responsible for land that it did not want or need, and to prevent land from becoming waste property, owned or developed by no one.  *Id*. at 448.

recorded plat in which the road was dedicated "to effect manifest acceptance of the offer to dedicate the road to public use." *Id*. at 430.

In *Christiansen*, 239 Mich App 380, the plaintiffs owned property in a subdivision in Gerrish Township that was bordered on the northern edge by Higgins Lake and bordered on the western edge by Grand Boulevard, which ran toward the lake. *Id*. at 382. The entire 505-foot length of Grand Boulevard was set forth in a 1903 plat of the subdivision and was offered to be dedicated for public use. *Id*. at 382. Approximately 280 feet of the boulevard was paved; the remainder of the boulevard was undeveloped from the mid-point of the plaintiffs' property to the shore of the lake. *Id*. The plaintiffs argued that a McNitt resolution, by itself, was insufficient to establish acceptance of the undeveloped portion of the boulevard. *Id*. at 386-387. This Court, despite describing one footnote in *Kraus*, 451 Mich at 429 n 5, as "a wavering by the *Kraus* Court regarding whether a McNitt resolution that specifically identifies the road in question is sufficient evidence of a formal acceptance," noted that "the *Kraus* Court did not reject *Rice* but merely clarified its holding." *Christiansen*, 239 Mich App at 389. This Court found that *Rice*, as clarified by *Kraus*, remained good law and that "the current state of the law, until such time as the Supreme Court overrules *Rice*, is that such a resolution *does* suffice to accept the road." *Id*. This Court held, "Therefore, as long as a McNitt resolution expressly identifies the street in question, the resolution suffices as evidence of a formal acceptance of the street." *Id*. at 390. This Court concluded that the 1940 resolution specifically identifying Grand Boulevard was sufficient evidence of a formal acceptance by the county. *Id*.

The 1937 McNitt resolution in this case expressly identified Walnut Plaisance and Lincoln Park Boulevard. This is sufficient evidence of a formal acceptance of the dedication of both roads by the Road Commission. Accordingly, the trial court did not err in concluding that the Road Commission formally accepted Walnut Plaisance and Lincoln Park Boulevard by way of resolution.

B. TIMELINESS OF THE ACCEPTANCE

The residents argue that the 1937 acceptance of the 1901 offers to dedicate were untimely. "[T]imely acceptance of dedicated lands in a plat requires that the acceptance of the dedication 'must take place before the offer lapses or before the property owner withdraws the offer.' "[5] *Pine Bluffs Ass'n v Dewitt Landing Ass'n*, 287 Mich App 690, 715; 792 NW2d 18 (2010), quoting *Marx v Dep't of Commerce*, 220 Mich App 66, 78; 558 NW2d 460 (1996). As long as the original proprietor or his successor takes no steps to withdraw the offer, the offer must be considered as continuing. *Kraus*, 451 Mich at 427; *White v Smith*, 37 Mich 291, 295-296 (1877). In *White*, the Court opined, "There is no doubt but that an acceptance must be made within a reasonable time, but what shall be considered such time must be largely governed by the surrounding circumstances in each case. And so long as the original proprietor, or those claiming through him, take no steps to withdraw the offer, we think it must be considered as

---

[5] Withdrawal occurs "when the proprietors use the property in a way that is inconsistent with public ownership." *Kraus*, 451 Mich at 431.

continuing." *White*, 37 Mich at 295-296. Similarly, the *Kraus* Court held that "whether an offer to dedicate lapsed or continued depends on the circumstances of each case." *Kraus*, 451 Mich at 427. The *Kraus* Court noted, "While the outer limit for acceptance within a reasonable time has not been set, we note that this Court has held that a 1961 acceptance of an 1874 grant (eighty-seven years later) was unreasonably late." *Kraus*, 451 Mich at 427.

In this case, the residents did not present evidence of any attempts to withdraw the offers to dedicate Walnut Plaisance and Lincoln Park Boulevard before the Road Commission's acceptance in 1937. Accordingly, under *Kraus*, 451 Mich at 425-427, the offers remained open at the time of the acceptance.

In *Christiansen*, 239 Mich App at 391, this Court found that the 37-year span between the offer and acceptance was more in line with *Ackerman v Spring Lake Twp*, 12 Mich App 498, 501; 163 NW2d 230 (1968) (holding that a 26-year time span was not unreasonable) than with *Kraus*, 451 Mich at 435 (holding that an 86-year time span was unreasonable). In this case, the 36-year time span between the offer and acceptance is similar to that in *Christiansen*, and therefore, was not unreasonable.

The residents point to *Vivian*, 433 Mich 511; 446 NW2d 161 (1989) (*Vivian*), and the cases cited therein, to support their argument that a 36-year time span between dedication and acceptance is excessive. In *Vivian II*, the plaintiff brought an action against the Roscommon County Board of Road Commissioners and others seeking to vacate an alley, street, and boulevard dedicated to public use in a 1901 plat. *Id*. at 513. The plaintiff had fenced, cared for, and maintained the property for over 40 years. *Id*. at 517. The dedication had not been accepted by any of the defendants. *Id*. The Supreme Court granted leave limited to the issue whether a 1978 amendment of the Subdivision Control Act of 1967,[6] 1967 PA 288, MCL 560.101 *et seq*.,[7] was applicable to the case. *Id*. at 513. The Court found that there was sufficient evidence to show that the plaintiff had withdrawn the dedication before the effective dates of either the act or the 1978 amendment. *Id*. at 516. The cases cited in *Vivian II* involved situations where a substantial period of time had elapsed between an offer of dedication and an attempted acceptance, the use of the dedicated property was inconsistent during that time period, and ultimately the dedication was never accepted. Those cases are inapposite to the issue in the present case of whether the dedications had lapsed prior to the Road Commission's acceptance of

---

[6] The Subdivision Control Act of 1967 is now referred to as the Land Division Act, 1996 PA 591.

[7] "The 1978 amendment added § 255b to the Subdivision Control Act. Section 255b provides that ten years after the date a plat is first recorded, land dedicated to the use of the public in a plat shall be presumed to have been accepted unless rebutted by evidence establishing either '(a) That the dedication, before the effective date of this act and before acceptance, was withdrawn by the plat proprietor' or '(b) That notice of the withdrawal of dedication is recorded' within ten years after the plat was first recorded and before acceptance of the dedicated lands." *Vivian*, 433 Mich at 513-514.

the dedications. Accordingly, the trial court did not err in finding that there was no question of fact that the acceptance of the dedications was timely.

## C. ACCEPTANCE OF THE ENTIRE LENGTH OF WALNUT PLAISANCE AND LINCOLN PARK BOULEVARD

The residents argue that because the 1937 McNitt resolution did not encompass the entire length of Walnut Plaisance and Lincoln Park Boulevard, the portion of the roads that terminate at the water's edge could not be accepted into the county road system. In support of their argument, they assert that the 1937 resolution referred to a shorter length of the roads than their actual lengths.

Assuming that the 1937 McNitt resolution did, in fact, accept less than the entire portions of Walnut Plaisance and Lincoln Park Boulevard, the residents have simply "assumed" that it was the lake ends of these roads that were not accepted. In support of this assumption, they highlight that none of Portage Lake Drive in the first, second, and fourth additions was accepted, and that Portage Lake Drive was eventually abandoned in the 1956 resolution. They argue that the Road Commission never intended to accept the portions of Walnut Plaisance and Lincoln Park Boulevard that end at the lake. The Road Commission, on the other hand, principally relies on the language in the 1956 resolution, which specifically provides that "all platted streets leading to the shore of Lake Margrethe and coinciding with PORTAGE LAKE DRIVE (sic) shall remain open public streets giving access in the manner shown in said Plats."

Whether or not the McNitt resolution evidenced intent to accept the entire road or just the specified portion is a factual question. See *Christiansen*, 239 Mich App at 387. In *Christiansen*, the McNitt resolution specified a length of road 472 feet long, while the actual road length was 505 feet. *Id*. The plaintiffs argued that the 33-foot difference had never been accepted by the resolution and therefore must be vacated. *Id*. This Court held that whether or not the McNitt resolution evidenced intent to accept the entire road or just the specified portion was a factual question. *Id*. at 387. This Court found that the trial court did not err in finding that the road commission intended to accept the entire road length on the basis of a surveyor's explanation that it may have simply been an oversight, noting that the "record [was] devoid of any logical explanation to explain the [approximately thirty-three foot] difference." *Id*. at 388 (alterations in original).

In this case, the trial court opined as follows, in relevant part:

> This Court finds that when the 1937 McNitt resolution and the 1956 resolution are read in conjunction with each other, the language supports a finding that even if the 1937 McNitt resolution did not intend to accept the entire portions of the roads, it did intend to accept the lakeward portions. As in *Christiansen*, the McNitt resolution does not contain any explanation for the lengths specified or why the entire lengths were not listed. However, the 1956 resolution makes it clear that the [Road Commission] wanted to ensure that public access to the Lake was preserved on any platted street that ended at the Lake, and more importantly to make it clear that the abandonment of Portage Lake Drive was not to affect public access to the Lake over these roads. In the Court's view the 1956

-9-

resolution is directly contrary to the [the residents'] assertion that in not accepting Portage Lake Drive in 1937, the Road Commission did not intend to accept roads leading to or along the Lake. As above, the [residents] have failed to bring forth any evidence to counter the plain language and intent of the 1956 resolution.

The trial court also found that because Portage Lake Park subdivision was platted as a lakefront subdivision, development of the lake area and access to the lake was of primary importance and, therefore, that it was reasonable to conclude that when the McNitt resolution was adopted, the Road Commission's primary concern would have been to address the portions of the streets and alleys that were closest to the lake. The court found that, "[a]s stated in *Christiansen*, no other logical explanation has been given for the discrepancies."

The trial court concluded:

> For purposes of this motion the Court finds that it does not need to determine whether the 1937 McNitt resolution accepted the entire portions of the roads at issue. The Court finds that based on the language in the 1956 resolution, there was an intent by the [Road Commission] to accept at least the portions of the roads that led to the shore of Lake Margrethe. To the extent that the 1937 McNitt resolution did not accept the entire portions of Walnut Plaisance and Lincoln Park Blvd., the Court finds that it did accept the portions of those roads that ended at Lake Margrethe or that coincided with Portage Lake Drive where it ran along Lake Margrethe. The [residents] have failed to provide any evidence to counter the plain language of the 1956 resolution or to provide evidence to support any other explanation for the discrepancy in measurements.

As the trial court found, in light of the 1956 resolution, there was no question of fact with respect to the Road Commission's intent to accept at least the portions of the roads that lead to the water's edge. Accordingly, the trial court did not err in finding that there was no question of fact that the Road Commission accepted the portions of Walnut Plaisance and Lincoln Park Boulevard that intersect with Portage Lake Drive and the edge of the lake.

### III. AMENDMENT OF COMPLAINT

The residents also argue that the trial court abused its discretion when it denied their motion for leave to amend their amended counterclaim to include a claim for common-law abandonment. Because the residents failed to file a proposed amendment in writing, we disagree.

This Court reviews a trial court's decision regarding a motion to amend the pleadings for an abuse of discretion. *Sanders v Perfecting Church*, 303 Mich App 1, 8-9; 840 NW2d 401 (2013). A trial court abuses its discretion when its decision is outside the range of principled outcomes. *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007).

When the trial court grants summary disposition to a party "based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be

-10-

justified." MCR 2.116(I)(5). "Amendments must be filed in writing . . . ." MCR 2.118(A)(4). When a party makes an oral request to amend the complaint under MCR 2.116(I)(5), that party must also offer a proposed amendment in writing. *Lown v JJ Eaton Place*, 235 Mich App 721, 726; 598 NW2d 633 (1999). Where a plaintiff fails to do so, the plaintiff has failed to comply with the court rule and the trial court does not abuse its discretion in denying the request to amend. *Id*.; see also *Burse v Wayne Co Med Examiner*, 151 Mich App 761, 768; 391 NW2d 479 (1986). Accordingly, because the residents failed to file a proposed amendment in writing, the trial court did not abuse its discretion when it denied the residents' motion to amend.

## IV. APPLICABILITY OF MCL 221.22

The residents argue that the trial court also erred when it concluded that MCL 221.22 did not apply to the property at issue in this case. We disagree.

Questions regarding the proper interpretation and application of a statute are reviewed de novo. *Spectrum Health Hosps v Farm Bureau Mut Ins Co*, 492 Mich 503, 515; 821 NW2d 117 (2012).

Specifically, the residents argue that under MCL 221.22,[8] the roads ceased to be public roads because the Road Commission never opened or worked on Walnut Plaisance and Lincoln Park Boulevard within four years after the dedications in the various plats. This precise issue was addressed and decided in *Rice*, 346 Mich 658. The Court held in *Rice* that MCL 221.22 did not apply to a road or street that was dedicated to the public on a recorded plat. *Id*. at 662-663. As the trial court properly noted, *Rice* has not been overturned and there are no other published decisions addressing the applicability of MCL 221.22 to roads dedicated in plats. The trial court properly found that MCL 221.22 does not apply to the facts and issues in this case.

## V. APPLICABILITY OF MCL 324.30111(b)

The residents argue that because Walnut Plaisance and Lincoln Park Boulevard as platted in the fourth addition have never been improved or opened and are not available for vehicular travel, the roads are not "lawfully open for public use" and not governed by MCL 324.30111b. We disagree.

Questions regarding the proper interpretation and application of a statute are reviewed de novo. *Spectrum Health Hosps*, 492 Mich at 515. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Latham*, 480 Mich at 111.

---

[8] MCL 221.22 provides that "[e]very public highway already laid out, or hereafter to be laid out, no part of which shall have been opened and worked within 4 years after the time of its being so laid out, shall cease to be a road for any purpose whatever."

MCL 324.30111b provides:

(1) A public road end shall not be used for any of the following unless a recorded deed, recorded easement, or other recorded dedication expressly provides otherwise:

(a) Construction, installation, maintenance, or use of boat hoists or boat anchorage devices.

(b) Mooring or docking of a vessel between 12 midnight and sunrise.

(c) Any activity that obstructs ingress to or egress from the inland lake or stream.

(2) A public road end shall not be used for the construction, installation, maintenance, or use of a dock or wharf other than a single seasonal public dock or wharf that is authorized by the local unit of government, subject to any permit required under this part. This subsection does not prohibit any use that is expressly authorized by a recorded deed, recorded easement, or other recorded dedication. This subsection does not permit any use that exceeds the uses authorized by a recorded deed, recorded easement, other recorded dedication, or a court order.

(3) A local unit of government may prohibit a use of a public road end if that use violates this section.

(4) A person who violates subsection (1) or (2) is guilty of a misdemeanor punishable by a fine of not more than $500.00. Each 24-hour period in which a violation exists represents a separate violation of this section. A peace officer may issue an appearance ticket as authorized by sections 9c to 9g of chapter IV of the code of criminal procedure, 1927 PA 175, MCL 764.9c to 764.9g, to a person who violates subsection (1) or (2).

(5) This section does not prohibit a person or agency from commencing a civil action for conduct that violates this section.

(6) As used in this section:

(a) "Local unit of government" means a township, city, or village in which the public road end is located.

(b) "Public road end" means the terminus at an inland lake or stream of a road that is lawfully open for use by the public.

Despite the trial court's thorough analysis of this issue, and the court's rejection of the residents' argument, the residents did not raise this argument in their statement of questions presented before this Court, nor did they address the trial court's ruling on this issue in their brief on appeal. Rather, in a reply brief, they simply announce, without any analysis of the issue, that

"a review of the 4th Addition as a stand-alone Plat demonstrates that Walnut Plaisance and Lincoln Park Blvd do not terminate at any body of water." The residents have abandoned this issue by failing to adequately brief it. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998); see also *Thompson v Thompson*, 261 Mich App 353, 356; 683 NW2d 250 (2004) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

The residents also argue that the trial court erred by finding that the subject roads were lawfully open for use by the public because there was "no evidence presented that would establish that [the] subject area was ever improved, maintained, or used by the general public." They contend that the test for determining whether a road is open for public travel for purposes of the highway exception to governmental immunity should be applied in determining whether a road is lawfully open for public use for purposes of MCL 324.30111b. Thus, they contend that the proper test is "whether a reasonable motorist, under all the circumstances, would believe that the road was open for travel." The residents do not cite any authority in support of their argument that the test applied for purposes of governmental immunity is applicable for purposes of MCR 324.30111b.

The trial court properly noted that the only case to address the requirements of MCL 324.30111b in its current form is *Colthurst v Bryan*, unpublished per curiam opinion of the Court of Appeals, issued June 14, 2016 (Docket No. 323539). In *Colthurst*, the plaintiff owned a lot on Wamplers Lake next to a 50-foot long right-of-way called Elm Court, which ended at the lakeshore. *Colthurst*, unpub op at 3. The plaintiff sought to enjoin the individual defendants' use of Elm Court to moor their boats, erect docks, and install boat lifts, and to store these various items. *Id*. The plaintiff argued that such uses exceeded the scope of the dedication in the plat and were prohibited by statute. *Id*. at 3-4. The defendants argued that Elm Court was not a road end as contemplated by MCL 324.30111b and that such activities were not prohibited. *Id*. at 4. In part, the defendants argued that Elm Court was not a road end because it was not really a road but merely a grassy area. *Id*. at 8. The trial court visited the area, and together with pictures and other documentary evidence, concluded that there was no question of fact that Elm Court was a public road end under the statute. *Id*. In affirming the trial court's decision, this Court found several factors that were important to the determination: (1) the plat clearly dedicated Elm Court to "the use of the public"; (2) backlot owners had access to the lake through Elm Court; (3) subdivision rules contemplated the use of Elm Court by the public to access the lake; and (4) the fact that Elm Court was not an improved road but merely a grassy area of land was not relevant; rather, it was the availability of the area for the public to use that controlled. *Id*.

In this case, the trial court found *Colthurst* persuasive due to the factual similarities between the two cases. The trial court opined:

The [c]ourt has already ruled that they remain public roads under the jurisdiction of the [Road Commission]. Here there is no question that backlot owners have used the area where both Walnut Plaisance and Lincoln Park Blvd. end to access Lake Margrethe. Here, both parties acknowledged on the record that members of the public could travel down Lincoln Park Blvd. as it currently exists and access the Lake. Finally, there are no questions of fact regarding the character of the area where these roads end. [the residents'] Exhibits A and B show an aerial

-13-

picture and a survey of the area. There is an obvious clearing and a turn-around for vehicles, as well as a boat launch area. The turn-around in particular is within the portion of Lincoln Park Blvd. that is contained in the 4th Addition plat. While there are some trees in the area where Walnut Plaisance ends that would prevent vehicular travel or the launching of watercraft, there is nothing that would prohibit the public from walking in that area or accessing the water there. Even if the rest of the length of Walnut Plaisance were found to be inaccessible by even foot traffic, the end of Walnut Plaisance where it meets the Lake certainly is accessible from Lincoln Park Blvd. Looking at all this evidence, this Court concludes, as did the trial court in *Colthurst*, that there could not be "any other way to look at this area as being other than the terminus of a public road at an inland lake." The [c]ourt finds that as a matter of law the road ends of Walnut Plaisance and Lincoln Park Blvd., whether in the 1st, 2nd, or 4th Additions, are lawfully open for the use of the public and are therefore public road ends for purposes of MCL 324.30111b.

While an unpublished opinion of this Court lacks precedential value, the analysis in *Colthurst* is factually similar, germane, instructive, and persuasive for the case at bar and we adopt its reasoning. MCR 7.215(C)(1); *Paris Meadows, LLC, v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). Application of the analysis to the undisputed facts, as set forth by the trial court, demonstrates that Walnut Plaisance and Lincoln Park Boulevard are open for the use of the public as a matter of law.

## VI. STANDING

Finally, the residents argue that Grayling does not have standing to bring this action for determination of the scope of the dedications of the various plats. We disagree.

"The question whether a party has standing presents a question of law reviewed de novo on appeal." *Tennine Corp v Boardwalk Commercial, LLC*, 315 Mich App 1, 7; 888 NW2d 267 (2016). Questions regarding the proper interpretation and application of a statute are reviewed de novo. *Spectrum Health Hosps*, 492 Mich at 515.

"The concept of standing represents a party's interest in the outcome of litigation that ensures sincere and vigorous advocacy." *House Speaker v Governor*, 443 Mich 560, 572; 506 NW2d 190 (1993). A party must demonstrate more than just "a commitment to vigorous advocacy." *Id*. It must also show that it has a substantial interest that "will be detrimentally affected in a manner different from the citizenry at large." *Id*. (citation omitted). That is, the plaintiff must demonstrate an actual injury or likely chance of immediate injury that is different from that of the general public. *Kuhn v Secretary of State*, 228 Mich App 319, 333; 579 NW2d 101 (1998). The plaintiff's suit is generally precluded if its interests are no different than those of the public. *Id*.

The residents have not cited any authority supporting their claim that Grayling lacks standing to bring a claim to enforce the scope of an accepted dedication of land for roads for public use. Grayling relies on the plain language of MCL 560.253(2) of the Land Division Act, MCL 560.101 *et seq*., which states that "the land intended for the streets, alleys, commons, parks

-14-

or other public uses as designated on the plat shall be held by the municipality in which the plat is situated in trust to and for such uses and purposes." Grayling argues that because it holds the roads at issue in trust for the use of the public, it has a legal obligation to institute legal action to protect the property held in trust for the benefit of the public. Grayling contends that *Wayne Co v Miller*, 31 Mich 447, 448-449 (1875), "supports the statutory citation above." In *Miller*, a strip of land that was recorded as part of a plat was recorded under the act of 1839, which "provided that a plat executed in accordance with its provisions should 'vest the fee of such parcels of land as are therein expressed, named or intended for public uses, in the county' in which such lands should lie." *Id*. at 448. The Court, noting that "[i]t is not very clear what sort of title the act of 1839 designed to vest in the county," stated, "[U]nquestionably the purpose was to vest in the county such a title as would enable the public authorities to devote the lands to all the public uses contemplated in making the plan, and to charge them with corresponding obligations when the title should vest." *Id*. at 449.

According to the plain language of MCL 560.253(2), Grayling has an obligation *to enforce the uses and purposes* of the "land intended for the streets, alleys, commons, parks, and other public uses as designated on the plats." MCL 560.253(2). Therefore, Grayling was the proper party to pursue a declaratory action concerning the scope of the dedications and to challenge any uses outside the scope of the dedications of the roads at issue. Accordingly, Grayling had standing to bring the action under MCL 560.253(2).

## VII. GRAYLING'S RIGHT TO COMMENCE A CIVIL ACTION UNDER MCL 324.30111b(5)

The residents argue the trial court also erred because Grayling was not allowed to commence a civil action as provided under MCL 324.30111b(5). We disagree.

Questions regarding the proper interpretation and application of a statute are reviewed de novo. *Spectrum Health Hosps*, 492 Mich at 515.

Grayling had the right to commence a civil action under MCL 324.30111b(5) for conduct that violated MCL 324.30111b. The residents sought a declaratory ruling as to whether MCL 324.30111b(5) grants townships a civil remedy or whether townships are limited to issuing appearance tickets under MCL 324.30111b(4). After a hearing on the request, the trial court treated the request "as a (C)(8) motion" because the request is "an argument that [Grayling] can't state a claim under the statute because the statute or any other authority doesn't give it the ability to do that." The trial court opined as follows:

[I]t's apparent to me that the sections of the statute are in there to accomplish different things. Section 3, to me, is more about a local government's ability to control what does or doesn't happen at the public road ends. In other words, to set rules and guidelines and boundaries for what can and can't happen at road ends.

It gives local governments the ability to prohibit uses. The converse of that, I think, is that it gives local governments the ability to issue permits for certain uses at road ends. But it gives local governments the ability to regulate.

-15-

Section 4 and Section 5, in my view, is more about enforcements. Section 4 allows for the potential for criminal penalties as a way to enforce, and Section 5 allows for civil remedies as a way to enforce. And so I think there is a distinction between allowing local governments the authority to regulate and allowing for enforcement. And so looking at it in that light, Section 5, to me, does not prohibit a local government, such as a township, from using its civil action to enforce. There's nothing that expressly excludes it. It uses pretty broad language. A person or agency, that's pretty broad. That could mean many different types of private and public entities and governmental entities.

So for those reasons, the [c]ourt finds that [Grayling] is not prohibited under the plain language of the statute from bringing a civil action, as they have. And so to the extent that this is a (C)(8) motion, the [c]ourt is going to deny the request for declaratory relief, again, looking at is using a (C)(8) analysis.

MCL 324.30111b provides, in pertinent part, as follows:

(3) A local unit of government may prohibit a use of a public road end if that use violates this section.

(4) A person who violates subsection (1) or (2) is guilty of a misdemeanor punishable by a fine of not more than $500.00. Each 24-hour period in which a violation exists represents a separate violation of this section. A peace officer may issue an appearance ticket as authorized by sections 9c to 9g of chapter IV of the code of criminal procedure, 1927 PA 175, MCL 764.9c to 764.9g, to a person who violates subsection (1) or (2).

(5) This section does not prohibit a person or agency from commencing a civil action for conduct that violates this section.

The residents' sole argument is that under the plain language of the statute, Grayling is not a "person or agency" and that it therefore cannot commence a civil action for conduct that violates MCL 324.30111b. This argument fails.

MCL 324.30111b(3) clearly gives a local unit of government, which includes townships, MCL 324.30111b(6), authority to prohibit a use of a public road end if that use violates MCL 324.30111b. MCL 324.30111b(4) provides that "[a] peace officer may issue an appearance ticket as authorized by sections 9c to 9g of chapter IV of the code of criminal procedure" to a person who violates subsection (1) or (2). MCL 324.30111b(5) provides, "This section does not prohibit a person or agency from commencing a civil action for conduct that violates this section." Nowhere does subsection 5 indicate that an entity is prohibited from bringing a civil action in reliance on the statute, or that the relief is limited to a select class of plaintiffs. Under a plain reading of the statute, *Klooster v City of Charlevoix*, 488 Mich 289, 295; 488 Mich 289 (2011), subsection 5 does not prohibit a local unit of government from commencing a civil action. Rather, subsection 5 appears to clarify that civil actions are not limited to those local units of government who have authority to prohibit a use of a public road end if that use violates

MCL 324.30111b. Grayling had a right to commence its civil action under MCL 324.30111b(5) for conduct that violated MCL 324.30111b.

Affirmed.

/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Karen M. Fort Hood